BANKRUPTCY RECOVERY GROUP, LLC
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@brg.legal
GARRETT NYE, ESQ.
Illinois Bar No. 6329215
(*Appearing Pro Hac Vice*)
Email: gnye@brg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (702) 483-6126
*Special Counsel for*
*Troy Fox, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>METAL PARTNERS REBAR, LLC,<br>☐   Affects this Debtor. | Case No.: BK-S-20-12878-ABL (Lead Case)<br>Jointly Administered with:<br>Chapter 7 |
| ☐   Affects Metal Partners Rebar, LLC<br>☐   Affects BGD LV Holding, LLC<br>☐   Affects BRG Holding, LLC<br>☐   Affects BCG Ownco, LLC<br>☒   Affects All Debtors | Jointly administered with:<br><br>Case No. BK-S-20-12876-ABL<br>Case No. BK-S-20-12789-ABL<br>Case No. BK-S-20-12880-ABL<br><br>Hearing Date:  June 7, 2023<br>Hearing Time: 9:30 a.m. |

**MOTION: (I) PURSUANT TO FED. R. BANKR. P. 9019 TO AUTHORIZE AND APPROVE SETTLEMENTS BETWEEN TROY FOX, CHAPTER 7 TRUSTEE AND (1) DEARBORN LIFE INSURANCE COMPANY; (2) RALEIGH MINE & INDUSTRIAL SUPPLY, INC. D/B/A STEELCON SUPPLY CO.; (3) NORTHERN INDIANA PUBLIC SERVICE COMPANY L.L.C.; (4) XTRA LEASE LLC; (5) B2B INDUSTRIAL PACKAGING, LLC; (6) ALTA INDUSTRIAL EQUIPMENT COMPANY; (7) CONTRACTORS STEEL COMPANY; (8) RICKLEFS TRANSPORTATION, LLC; (9) DAYTON SUPERIOR CORPORATION; (10) KRB MACHINERY COMPANY; AND (11) INSTEEL WIRE PRODUCTS COMPANY; AND (II) PURSUANT TO FED. R. BANKR. P. 328, 330, AND 331 FOR AWARD AND PAYMENT OF CONTINGENCY FEE AND EXPENSES**

Troy Fox, as Chapter 7 Trustee ("Trustee") of the bankruptcy estates of Metal Partners Rebar, LLC, BGD LV Holding, LLC, BRG Holding, LLC, and BCG Ownco, LLC (collectively, the "Debtors"), by and through his special counsel, Bankruptcy Recovery Group, LLC, hereby

submits this motion (the "Motion") for: (i) entry of an order pursuant to Bankruptcy Rule[1] 9019, substantially in the form attached hereto as **Exhibit 2** (the "9019 Order"), approving the proposed *Settlement Agreement and Mutual Release* (the "Settlement Agreements") by and between the Trustee and (1) Dearborn Life Insurance Company; (2) Raleigh Mine & Industrial Supply, Inc. d/b/a Steelcon supply Co.; (3) Northern Indiana Public Service Company L.L.C.; (4) XTRA Lease LLC; (5) B2B Industrial Packaging, LLC; (6) Alta Industrial Equipment Company, L.L.C.; (7) Contractors Steel Company; (8) Ricklefs Transportation, LLC; (9) Dayton Superior Corporation; (10) KRB Machinery Company; and (11) Insteel Wire Products Company (collectively, the "Settling Transferees"), attached hereto as **Exhibits 3-13**; and (ii) pursuant to Sections 328, 330, and 331 allowing Bankruptcy Recovery Group's ("BRG") contingency fee and reimbursement of expenses for each of the foregoing settlements. A summary of each the claims asserted against each of the Settling Transferees, the defenses raised by the Settling Transferees, and the amount of each settlement is attached hereto as **Exhibit 1.**

      This Motion is made and based upon the following memorandum of points and authorities, the declarations of Troy Fox (the "Fox Decl.") and Talitha Gray Kozlowski (the "Gray Kozlowski Decl.") filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

## I.
## BACKGROUND

1. Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on June 16, 2020, thereby commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases"). *See* ECF No. 1.[2]

---

[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" or "LR" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

[2] Unless otherwise stated herein, all ECF references are to the docket in the lead case.

2. On June 19, 2020, the Bankruptcy Cases were jointly administered under case number 20-12878-abl. *See* ECF No. 49.

3. On April 1, 2022, the Bankruptcy Cases were converted to Chapter 7. *See* ECF No. 739.

4. Upon conversion of the Bankruptcy Cases to Chapter 7, the Trustee was appointed as the Chapter 7 trustee for the Debtors' estates. *See* ECF No. 741.

5. On January 20, 2023, the Court authorized the Trustee to retain BRG as special counsel to prosecute the Debtors' estates' actions arising under Chapter 5 of the Bankruptcy Code (the "Chapter 5 Claims") (solely excluding adversary number 21-01005-abl) on a contingency fee arrangement. *See* ECF No. 831.

6. After being employed as the Trustee's special counsel to prosecute the Chapter 5 Claims, BRG analyzed the Debtors' estates' Chapter 5 Claims against each of the Settling Transferees and sent demand letters accompanied with draft complaints (the "Demand Packages") to each of the Settling Transferees. *See* Gray Kozlowski Decl. ¶ 3.

7. After having received the Demand Packages, each of the Settling Transferees provided responses asserting a variety of defenses, including new value and ordinary course defenses as more fully set forth on Exhibit 1 hereto. *Id.* ¶ 4.

8. Each of the Settling Defendants' asserted defenses were reviewed and analyzed, informal discovery was undertaken where necessary, and negotiations ensued resulting in the proposed settlements summarized on Exhibit 1 and memorialized in the settlement agreements attached as Exhibits 3-13. *Id.* ¶ 5; Fox Decl. ¶ 3.

## II.
## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and LR 1001(b)(1). This Motion a core proceeding under 28 U.S.C. § 157(b)(2)(A). Pursuant to LR 9014.2, the Trustee consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

Bankruptcy Recovery Group, LLC
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

10. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

11. The statutory bases for the relief requested herein are Sections 105, 328, and 330 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## III.
## LEGAL ARGUMENT

A. **Applicable Standard Under Bankruptcy Rule 9019.**

Compromise and settlement agreements have long been an integral part of the bankruptcy process. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157 (1958) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14, (1939)). A bankruptcy court may approve a compromise if it makes an informed, independent judgment that the compromise is fair and equitable. *See id.*

In order to determine whether a proposed settlement is fair and equitable, a bankruptcy court is directed to consider the following factors (the "A&C Properties Factors"): "(1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed." *In re Endoscopy Ctr. of S. Nevada, LLC*, 451 B.R. 527, 535 (Bankr. D. Nev. 2011) (*citing In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

In seeking approval of a compromise, the trustee has the burden of persuasion. *See id.* at 536 (*citing TMT Trailer*, 390 U.S. at 425). However, the trustee is not necessarily required to satisfy each of the A&C Properties Factors, as long as they favor approval of the settlement as a whole. *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its own judgment, the court determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation." *In re Endoscopy Center*, 451 B.R. at 535 (*citing TMT Trailer*, 390 U.S. at 425).

Thus, the settlement does not have to be the best the trustee could have possibly obtained, but must only fall "within the reasonable range of litigation possibilities." *In re Adelphia Commc'ns*

*Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). The court is not required to conduct a mini-trial of the underlying claims or rule upon disputed facts and questions of law, which would defeat the purpose of settlement and frustrate negotiations, but need only canvass the issues. *See Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (*citing Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)); *In re W. Funding Inc.*, 550 B.R. 841, 852 (B.A.P. 9th Cir. 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).

### A. The Settlements Are Fair and Reasonable and Should be Approved.

Each of the A&C Properties Factors support approval of the Settlement Agreements, which are fair and equitable when comparing the estate claims being compromised against the likely rewards of litigating each of the claims through trial.

*First*, the settlement amount for each of the claims against the Settling Transferees falls well within the range of litigation possibilities. BRG discussed the claims with the Settling Transferees and, where appropriate, took informal discovery. BRG assessed the information gathered along with Debtors' records and information otherwise available on the docket. Credit for any subsequent new value was provided (11 U.S.C. § 547(c)(4)) and other asserted defenses (if any) were weighted. BRG provided its best estimate of what liability might look like to the Trustee should these matters proceed to litigation. *See* Gray Kozlowski Decl. ¶ 6. The Trustee considered the information and recommendations provided by BRG and determined the appropriate settlement offers. *See* Fox Decl. ¶ 4. Based on those estimates, these settlements, in aggregate, represent a recovery of 62% of anticipated liability before giving significant discounts for asserted ordinary course and other defenses. Were the Settling Transferees successful on their ordinary course and other defenses, the recovery for the estates would be significantly less. *See id.* As a result, the first A&C Properties Factor weighs strongly in favor of approval of the Settlement Agreement.

*Second*, there is no certainty of collection on any judgment which might be entered in favor of the Trustee were these claims to be tried. Furthermore, with respect to certain of the Settling Transferees, discussions indicated that there are potential obstacles to collectability. As a result, the second A&C Properties Factor weighs in favor of approval of the Settlement Agreement.

*Third*, the Trustee provided subsequent new value credits to each of the Settling Transferees. Should any of these matters proceed to litigation, it will be necessary to litigate other potential defenses, including the ordinary course of business defense (11 U.S.C. § 547(c)(2)), which is highly fact intensive. Such fact intensive issues will require extensive discovery and will likely require trial. In light of all the foregoing, the third A&C Properties Factor—the amount at issue in relationship to the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending them—supports approval of each of the settlements summarized on Exhibit 1 and memorialized in the settlement agreements attached as Exhibits 3-13.

*Fourth*, as noted above, the settlement amounts, in aggregate, represent a favorable recovery for the estates and without the significant delay of litigation and, therefore, are beneficial to the estates' creditors. As a result, the fourth A&C Properties Factor also supports approval of the Settlement Agreements.

Based on the foregoing, the Trustee submits that each of the settlements is fair and reasonable and requests that they be approved. *See* Fox Decl. ¶ 5.

## IV.
## PAYMENT OF CONTINGENCY FEE AND REIMBURSEMENT OF EXPENSES

BRG was employed as the Trustee's special counsel on a contingency basis. *See* ECF Nos. 822 and 831. BRG's engagement agreement provides that for matters resolved pre-suit, BRG shall earn legal fees on a contingency basis of 18.5% of the cash value of any recoveries and the cash equivalent value of any claim waiver obtained from a potential defendant (only to the extent the waiver of such claim accrues to the estates' benefit and increases the estates' recovery) after BRG issues a demand but prior to initiating an action proceeding against such defendant, plus reimbursement of any expenses advanced by BRG in connection with such claims. *Id.*

Accordingly, the Trustee seeks allowance of and authority to pay BRG an 18.5% contingency fee equal to $26,436.56 ("Contingency Fee"), plus $1,073.70 of expenses, which payment shall be made from the settlement proceeds paid by the Settling Transferees. *See* Gray Kozlowski Decl. ¶ 7.

Pursuant to 11 U.S.C. § 330(a), the bankruptcy court reviews the services the professional provided, and decides whether the requested compensation is reasonable. A Section 330 analysis of a contingency fee takes into consideration "settlement proceeds received by the estate in determining a reasonable fee under" Section 330. *See In re Plant Insulation Co.*, 2012 WL 3322636, at * 2 (Bankr. N.D. Cal. Aug. 7, 2012). BRG submits that the requested Contingency Fee satisfies Section 330.

First, this Court preapproved the contingency fee arrangement after notice to all parties in interest. *See* ECF Nos. 822 and 831. Second, the pre-suit contingency fee of 18.5% is materially lower than often charged by commercial contingency counsel. *See In re Private Asset Grp., Inc.* 579 B.R. 534, 544-45 (Bankr. C.D. Cal. 2017) ("Outside of bankruptcy, contingency fees are often 33 percent or, if there is an appeal, 40 percent."); *In re Pearlman,* 2014 WL 1100223, *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("Resting again on its independent judgment, the Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates.").

Third, contingency fees, by their nature, operate to provide reasonable, market compensation over a series of engagements where any particular engagement incurs the risk of non-payment, or payment at significantly less than prevailing per-hour rates. While any particular engagement could result in compensation above prevailing per-hour rates, this is counterbalanced by non- or reduced payment in other engagements.

Fourth, given the limited assets of the estates when BRG was retained, the contingency fee arrangement benefitted the Debtors' estates by shifting material risk from the estates onto BRG which immediately invested resources investigating and pursuing claims for the estates' benefit. *Fann Contracting, Inc. v. Garman Turner Gordon LLP*, 620 B.R. 141, 147 (D. Nev. 2020); *see also, generally, In re Smart World Techs. LLC*, 423 F.3d 166, 180 (2d Cir. 2005) ("Here, Smart World's counsel was retained on a contingency basis, meaning that Smart World's pursuit of its adversary claims would have subjected the bankruptcy estate to no risk, while allowing the estate to reap any potential award."). Further, not only did BRG take on the risk of non-payment, BRG undertook even greater risk by agreeing to front all of the costs of litigation.

Fifth, BRG was charged with considering and investigating Chapter 5 claims against more than 100 potential targets. BRG invested substantial resources to analyze claims against potential transferees, ultimately recommending to the Trustee which claims are meritorious and which should not be brought. As a result, BRG's efforts included advising that the Trustee does not hold Chapter 5 claims against certain potential targets. The contingency fee agreement does not provide for BRG to be compensated for these significant efforts that benefited the estates. Rather, these efforts are part of the basket of services BRG provides to the Trustee and the estates. *See* Gray Kozlowski Decl. ¶ 8.

Finally, BRG has performed significant work investigating and pursuing this and other claims in a high-quality and expeditious manner, which resulted in filing 59 separate adversaries, which filing fees were all advanced by BRG. *See id.* ¶ 9.

For these reasons, BRG submits that the Contingency Fee is reasonable and should be approved.

| Description of Expenses | Amount |
|---|---|
| Postage for mailing | $786.55 |
| Demand letter supplies | $287.15 |

BRG did not charge for copies. *See* Gray Kozlowski Decl. ¶ 12.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

Bankruptcy Recovery Group, LLC
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## V.
## CONCLUSION

Each of the settlements memorialized in the Settlement Agreements attached as Exhibits 3-13 hereto are in the best interests of the estates and the Debtors' creditors and are fair and equitable under the standard set forth in *A&C Properties*. Accordingly, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreements and approving and awarding BRG's contingency fee and reimbursement of expenses substantially in the form of **Exhibit 2**.

Dated this 9th day of May, 2023.

BANKRUPTCY RECOVERY GROUP LLC

By: */s/ Talitha Gray Kozlowski*
TALITHA GRAY KOZLOWSKI, ESQ.
GARRETT NYE, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Special Counsel for Troy Fox, Chapter 7 Trustee*